IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| DAVID MIZER ENTERPRISES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 14-CV-2192 ) |
| NEXSTAR BROADCASTING, INC., | ) ) ) |
| Defendant. | ) ) |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on Defendant Nexstar Broadcasting, Inc.'s Motion to Dismiss Counts I and II (d/e 6). The Motion is GRANTED IN PART and DENIED IN PART. The Court strikes the request for punitive damages in Count I but otherwise finds Plaintiff has stated a claim in Counts I and II.

### I. BACKGROUND

In August 2014, Plaintiff, David Mizer Enterprises, Inc., filed a four-count Complaint against Defendant alleging claims of

breach of contract (Count I), conversion (Count II), quantum meruit (Count III), and copyright infringement (Count IV).

The Complaint alleges that Plaintiff is a corporation that provides technology services. Compl. ¶ 3. Plaintiff created a business model and supporting technology for providing services to automobile dealers. Id. ¶ 5. The services included a system to manage inventory and facilitate web-based automobile shopping. Id.

Defendant operates television stations throughout the country. Id. ¶ 6. Defendant wanted to use Plaintiff's product with its current and prospective automotive dealership advertising customers. Id.

In August 2008, Plaintiff and Defendant agreed to a written Licensing Agreement with a term of January 1, 2008 through December 31, 2010. Id. ¶ 8. Pursuant to the Licensing Agreement, Defendant was granted use of Plaintiff's proprietary software and business model for three years in exchange for certain fees as outlined in the Agreement. Id. ¶ 9. The Licensing Agreement prohibited Defendant from using, making available, selling,

disclosing, or otherwise communicating to any third party any confidential information:

> LICENSEE will not, directly or indirectly, use, make available, sell, disclose, or otherwise communicate to any third party other than in his assigned duties and for the benefit of the COMPANY, and of the COMPANY's Confidential Information, either during or after his relationship with the COMPANY, without the prior written approval of the President of the COMPANY. LICENSEE acknowledges that he is aware that the unauthorized disclosure of Confidential Information of the COMPANY may be highly prejudicial to its interests, an invasion of privacy, and an improper disclosure of trade secrets, and may subject the LICENSEE to legal liability for damages or to injunctive relief.

Compl. ¶27; Licensing Agreement ¶ 7w. The Licensing Agreement required that, upon request or termination of the agreement, Defendant return all materials and writings received from, created for, or belonging to Plaintiff. Licensing Agreement ¶ 7y.

During the contract period, Defendant used Plaintiff's software, support, and business model. Compl. ¶ 10. Pursuant to the Licensing Agreement and the protections therein, Plaintiff allowed Defendant to "host proprietary and copyrighted pages (code) owned by [Plaintiff] on [Defendant] servers." Id. ¶ 11. This gave Defendant the ability to add and remove software from its

station websites.  Id.  Defendant also had the ability to review the participating dealerships for each of its station websites.  Id.

Defendant's Springfield, Missouri market (the Missouri market) was the most successful organization that used Plaintiff's software and business model during the contract term.  However, the Missouri market allegedly misappropriated Plaintiff's proprietary business model for its own use and began to develop its own comparable software with the assistance of at least two outside vendors, Blue Host and Red Crow Marketing, as well as potential and future shareholders in Performance Team, LLC.  Id. ¶ 16.  The Missouri market intended to own and market its own automotive solution once the contract with Plaintiff expired.  Id.  In June 2012, the Missouri market, along with shareholders of Performance Team, LLC, copied Plaintiff's actual software code without authorization of Plaintiff.  Id. ¶ 17.

Defendant continued to use Plaintiff's product after the contract term expired (January 1, 2011 until early February 2013).  Compl. ¶ 19.  Defendant failed to pay Plaintiff for its use of the software and business model during the contract term and after the contract had expired.  Id. ¶¶ 20, 21.  Defendant also failed to

pay Plaintiff for its misappropriation and copyright infringement of its software and business model. Id. ¶ 23.

In Count I of the Complaint, Plaintiff alleges that Defendant breached the Licensing Agreement by (1) failing to pay $332,925 due under the terms of the Licensing Agreement and following the expiration of the Licensing Agreement; and (2) disclosing Plaintiff's business model and confidential information to at least two third party companies, Blue Host and Red Crow Marketing, as well as the potential and future shareholders of Performance Team, LLC. Compl. ¶¶ 26, 28. Plaintiff also alleges that Defendant acted in bad faith and that Plaintiff is entitled to punitive damages.

Specifically, Plaintiff alleges that Defendant "knew of attempts to appropriate and use [Plaintiff's] software and business model on company time and with company resources and failed to direct that they cease and desist from such activity." Compl. ¶ 31(a). Plaintiff also alleges that Defendant failed to cooperate in any way to assist in billing or resolving any payment issues. Id. ¶ 31(b). Finally, Plaintiff alleges that Defendant failed to negotiate a resolution to the contract in good faith. Id. ¶ 31(c). Plaintiff seeks actual damages, lost profits, consequential damages, punitive

damages, interest, costs, reasonable attorney's fees, and any other appropriate relief.

In Count II, Plaintiff alleges that Defendant's unauthorized use of Plaintiff's proprietary software after expiration of the licensing agreement and Defendant's authorized copying of the software code and technology of Plaintiff for use at Defendant and other media organizations constitutes conversion. Compl. ¶¶ 34, 35. Plaintiff also alleges that Defendant's use of the software code belonging to Plaintiff to create a similar platform that had the same look and feel of Plaintiff's technology constitutes conversion by Defendant. Id. ¶ 36. The conversion has caused Plaintiff to suffer the loss of revenue for use of the proprietary software, loss of revenue in the form of future profits that Plaintiff could have obtained but for the conversion, and the loss of credibility due to the existence of an inferior product being used that contains elements of Plaintiff's propriety software. Id. ¶ 38. Plaintiff seeks damages, punitive damages, interest, costs, reasonable attorney's fees, and any other appropriate relief.

In September 2014, Defendant filed a Motion to Dismiss Counts I and II of Plaintiff's Complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6). Defendant has filed an Answer to Counts III and IV. See d/e 10.

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. Christensen v. Cnty. of Boone, 483 F.3d 454, 458 (7th Cir. 2007). To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing he is entitled to relief and giving the defendants fair notice of the claims. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in plaintiff's favor. Id. However, the complaint must set forth facts that plausibly demonstrate a claim for relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). A plausible claim is one that alleges factual content from which the Court can reasonably infer that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Merely reciting the elements of a cause

of action or supporting claims with conclusory statements is insufficient to state a cause of action.  Id.

### III. JURISDICTION

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Plaintiff is a corporation formed and existing under the laws of the State of Illinois and with its principal place of business in Illinois.  Defendant is a corporation formed and existing under the laws of the State of Delaware and with its principal place of business in the State of Texas.  Plaintiff seeks money damages in excess of $75,000.

Venue is proper because the parties agreed that any action or proceeding arising out of the Licensing Agreement would be "commenced and maintained only in courts located in Sangamon County, Illinois" and consented to the jurisdiction of the state and federal court located in Sangamon County.  Licensing Agreement ¶ 11pp; see also Muzumdar v. Wellness Int'l Network, Ltd., 438 F.3d 759, 762 (7th Cir. 2006) ("where venue is specified with mandatory or obligatory language, the clause will be enforced"), (citing Paper Express, Ltd. v. Pfankuch Maschinen GmbH, 972 F.2d 753 (7th Cir. 1992)).

# IV. ANALYSIS

In the Motion to Dismiss, Defendant argues that Count I should be dismissed to the extent it seeks punitive damages because the allegations do not support a claim for punitive damages. Defendant seeks to dismiss the conversion claim in Count II on the ground that Plaintiff does not appear to be seeking to return of any physical property and instead appears to seek damages for an alleged interference with intangible rights.

**A.  Plaintiff Fails to State a Claim for Punitive Damages**

In Count I, Plaintiff alleges Defendant breached the Licensing Agreement and seeks punitive damages because Defendant acted maliciously and in bad faith. In support of that claim, Plaintiff alleges that Defendant knew of the attempts to use Plaintiff's software and business model and did nothing to stop such activity, failed to cooperate with billing and payment issues, and failed to negotiate a resolution to the contract in good faith. Compl. ¶¶ 31(a), (b), (c).

Defendant moves to dismiss Count I on the ground that the allegations do not support a claim for punitive damages.

The parties agree that the Licensing Agreement is governed by Illinois law. See Licensing Agreement ¶ 11pp. Under Illinois law, punitive damages are generally not available for breach of contract. Morrow v. L.A. Goldschmidt Assocs., Inc., 112 Ill. 2d 87, 94 (1986). An exception exists when the "conduct causing the breach is also a tort for which punitive damages are recoverable":

> That is, punitive damages are recoverable "where the breach amounts to an independent tort and there are proper allegations of malice, wantonness or oppression."

Id. at 95 (quoting Bank of Lincolnwood v. Comdisco, Inc., 111 Ill. App. 3d 822, 829 (1982)).

Plaintiff argues that Defendant's actions constitute not only breach of contract but also the torts of conversion and copyright infringement, which are alleged in Counts II and IV. Plaintiff further argues that Defendant did nothing to prevent the appropriation of Plaintiff's software and business model and such failure at least constituted gross negligence. Resp. p. 3 (d/e 9) (citing Heldenbrand v. Roadmaster Corp., 277 Ill. App. 3d 664, 672 (1996) ("Punitive damages may be granted where torts are committed with fraud, actual malice, or deliberate violence or oppression or when the defendant acts willfully or with such gross

negligence as to indicate a wanton disregard of the rights of others")).

Even assuming Plaintiff has properly alleged that the breach of contract amounts to an independent tort, Plaintiff has not alleged malice, wantonness, or oppression.  The only allegations Plaintiff made regarding actual malice by Defendant address the breach itself: that Defendant failed to stop the misappropriation of Plaintiff's software and business model, failed to cooperate in resolving the billing and payment issues, and failed to negotiate a resolution of the contract in good faith.  This is insufficient to support a request for punitive damages.  See Morrow, 112 Ill. 2d at 87, 98-99 (a willful and wanton breach of contract does not support a claim for punitive damages); St. Ann's Home for the Aged v. Daniels, 95 Ill. App. 3d 576, 580 (1981) (holding that "[i]t is not so much the tort committed as the motive and conduct in committing it that is the basis of awarding punitive damages" and concluding that while the breach caused hardship, the conduct could not properly be characterized as wanton, malicious, or oppressive).  Therefore, the Court strikes Plaintiff's request for punitive damages in Count I.

## B. Plaintiff Has Sufficiently Alleged a Conversion Claim

Defendant also moves to dismiss Count II, which alleges conversion.

To prove conversion under Illinois law, a plaintiff must establish that he (1) has a right to certain property; (2) has an absolute and unconditional right to the immediate possession of the property; (3) made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. Cirrincione v. Johnson, 184 Ill. 2d 109, 114 (1998). Ordinarily, "'an action for conversion lies only for personal property which is tangible, or at least represented by or connected with something tangible.'" In re Thebus, 108 Ill. 2d 255, 260 (1985) (quoting 18 Am.Jur.2d Conversion sec. 9, at 164 (1965)).

Defendant argues that, although the Licensing Agreement provides that Defendant is obligated to return software or any other physical material provided by Plaintiff, Plaintiff does not seek return of these physical objects in its claim for conversion. Instead, Plaintiff appears to seek damages for an alleged interference with Plaintiff's intangible rights in the software that

Plaintiff created. Defendant asserts that Illinois courts do not recognize an action for conversion of intangible rights.

Plaintiff responds that Defendant appropriated and used Plaintiff's software and business model after the contract period expired. Plaintiff seeks damages and other relief appropriate, which would include the return of any copies of proprietary software or other property of Plaintiff that is in Defendant's possession. Plaintiff also asserts that conversion can apply to intangible rights if the intangible property includes information that Plaintiff would have to recreate. Finally, Plaintiff also contends that if a claim for conversion does not apply, Defendant's actions still constitute a misappropriation of trade secrets and civil conspiracy, and Plaintiff should be granted leave to plead these alternative claims.

The law in Illinois is unclear whether an action for conversion lies solely for intangible property. Compare <u>Stathis v. Geldermann, Inc.</u>, 295 Ill. App. 3d 844, 856 (1998) (First District) (parties may recover for conversion of intangible assets) and <u>Conant v. Karris</u>, 165 Ill. App. 3d 783, 792 (1987) (First District) (finding the plaintiff stated a claim for conversion of confidential information) with <u>Am.</u>

Nat'l Ins. Co. v. Citibank, N.A., 543 F.3d 907, 910 (7th Cir. 2008) (Illinois law "does not recognize an action for conversion of intangible rights"). This Court need not decide that issue, however, because the Complaint alleges the conversion of property that is tangible "or at least represented by or connected with something tangible." Bilut v. Northwestern Univ., 296 Ill. App. 3d 42, 52 (1998) (finding that the plaintiff's research was "a proper subject for conversion because the printed copy of the research constituted tangible property").

Specifically, the Licensing Agreement provided that Plaintiff would provide to Defendant a license to use Plaintiff's proprietary software, business models, web services, and other related intellectual property. Licensing Agreement, ¶ 1b, 1d, 2e, 5o. The Licensing Agreement also contemplated the return of confidential information—including material and writings—upon termination of the relationship. Licensing Agreement, ¶ 7y. The Complaint can be fairly read to include a request for return of the physical items that remain in Defendant's possession. Therefore, Plaintiff has alleged the conversion of property that is tangible "or at least

represented by or connected with something tangible. See Thebus, 108 Ill. 2d at 260.

Finally, although the parties do not specifically address the issue, several courts have held that a plaintiff may still bring a conversion claim even if a defendant does not exercise exclusive control over the property. See J & J Sports Productions Inc. v. Ward, No. 10-cv-193, 2010 WL 4781140, at *5 (N.D. Ill. Nov. 17, 2010) (finding the plaintiff sufficiently alleged conversion where, even though the plaintiff was not denied the entire benefit of the converted property, the defendant exercised control in a way that was inconsistent with the plaintiff's rights); DirectTV, Inc. v. Adrian, No. 03 C 6366, 2004 WL 1660665, at *4 (N.D. Ill. July 22, 2004) (finding that "[b]ecause defendant's alleged interception of plaintiff's signals was inconsistent with plaintiff's ownership rights, plaintiff's conversion claim may stand"); but see Ho v. Taflove, 696 F.Supp.2d 950, 957 (N.D. Ill. 2010) (finding that the defendant's unauthorized copying and use of the plaintiffs' published works did not sustain a cause of action for conversion because the plaintiffs were not deprived of the use of their property); DIRECTV, Inc. v. Castillo, No. 03 C 3456, 2004 WL 783066, at *2 (N.D. Ill.

Jan. 2, 2004) (finding that the interception of video and audio signals did not constitute conversion because the plaintiff was not deprived of its continued use of the encrypted satellite television signal).

Here, to the extent Defendant misappropriated confidential information, that misappropriation deprived Plaintiff of the exclusive benefit of the information. See, e.g., Conant, 165 Ill. App. 3d at 792 (noting that "[o]nce confidential information is released to competitors, it hardly can be said that the data is still confidential. Thus, the original owner would be deprived of the benefit of the information."). Therefore, for purposes of the motion to dismiss, Plaintiff has alleged that Defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. DIRECTV, Inc. v. Ostrowski, 334 F.Supp.2d 1058, 1064 (N.D. Ill. 2004)(finding the plaintiff stated a claim for conversion even though the defendant did not deprive the plaintiff of the ability to obtain all benefit from its satellite programming because the unauthorized use was inconsistent with the plaintiff's rights).

## V. CONCLUSION

For the reasons stated above, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The Court STRIKES the request for punitive damages in Count I. Defendant is DIRECTED to answer Counts I and II on or before February 17, 2015.

ENTER: February 2, 2015

FOR THE COURT:

                            <u>s/Sue E. Myerscough</u>
                            SUE E. MYERSCOUGH
                            UNITED STATES DISTRICT JUDGE