E-FILED
Wednesday, 31 August, 2016  01:46:01 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DAVID MIZER ENTERPRISES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 14-cv-2192 |
| | ) | |
| NEXSTAR BROADCASTING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

THOMAS P. SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

Before the Court is Plaintiff David Mizer Enterprises, Inc.'s (Plaintiff) Motion for Sanctions (d/e 39) against Nexstar Broadcasting, Inc. (Defendant).  For the reasons stated below, Plaintiff's Motion is allowed in part and denied in part.

BACKGROUND

Plaintiff filed its Complaint (d/e 1) in this case on August 11, 2014. The Plaintiff's Complaint alleges that Plaintiff entered into a contract with the Defendant which operates television stations throughout the country. The contract provided that the Defendant would utilize Plaintiff's proprietary software and business model for car locating for a period of three years in exchange for certain fees as outlined in Appendix A of the contract (d/e 1, pg 3).  The Plaintiff alleges that Plaintiff allowed Defendant to host

proprietary copyrighted pages owned by Plaintiff on Defendant's server, giving Defendant the ability and autonomy to add and remove the software from its station websites as it so desired (d/e 1, pg 3).  The contract did not specify an automatic extension beyond the termination date of December 31, 2010.  The Plaintiff alleges, however, that Defendant continued to use Plaintiff's product after the term expired from January 1, 2011 until early February, 2013, and failed to pay Plaintiff for its usage of the car locating software and business model (d/e 1, pg 4).

Based upon these facts, the Plaintiff asserts claims of Breach of Contract (Count I) (d/e 1, pg 5); Conversion (Count II) (d/e 1, pg 7); Quantum Meruit (Count III) (d/e 1, pg 9); and, Copyright Infringement (Count IV) (d/e 1, pg 10).

Defendant filed a Motion to Dismiss Counts I and II (d/e 6).  The motion to dismiss was granted in part and denied in part, with the Court striking the request for punitive damages in Count I (d/e 15).  Defendant has answered all counts of the Complaint (d/es 10, 19).

On January 21, 2015, Plaintiff filed a Motion to Compel Initial Disclosures and Discovery Responses (d/e 14).  The Court ruled on the motion to compel on February 4, 2015, ordering the Defendant to respond

to discovery in accordance with Federal Rules of Civil Procedure by February 28, 2015, and finding that no award of fees was appropriate.

On February 12, 2015, the Court entered a Scheduling Order (d/e 18) governing discovery and trial settings.

On September 16, 2015, Plaintiff filed a Motion to Compel (d/e 24) and a Motion for Sanctions Due to Spoliation of Evidence (d/e 25). Plaintiff's motion for sanctions due to spoliation of evidence was based upon the "reimaging" of a hard drive on the computer of Todd Hartsell (a potential witness in this case) after the Plaintiff had issued interrogatories and requests to produce which specifically requested information that could have existed on Hartsell's hard drive (d/e 26, pg 5).  The Defendant had responded to one of Plaintiff's interrogatories stating "Mr. Hartsell's computer was reimaged in November or December of 2014 and Mr. Hartsell lost all documents and data saved by him to his computer's hard drive during the reimaging" (d/e 30-3, pg 17).

On October 7, 2015, Plaintiff's Motion to Compel (d/e 24) was denied as moot because the Defendant indicated it was providing the requested discovery.  On November 20, 2015, the Court denied Plaintiff's Motion for Sanctions Due to Spoliation of Evidence (d/e 25) without prejudice with leave to re-file.

On November 25, 2015, Plaintiff filed another Motion to Compel
(d/e 30).  Defendant responded (d/e 31) to this motion to compel.  The
Court set an evidentiary hearing on this motion to compel on March 9,
2016.  The Defendant filed a motion to continue (d/e 36) the hearing on the
motion to compel in order to present live testimony at the hearing.  On
March 3, 2016, the Court allowed the motion to continue the hearing and
set the hearing for March 30, 2016.  During a telephone conference with
the parties regarding the nature of evidence to be presented at the
evidentiary hearing, an oral motion to continue the hearing was allowed
and the hearing was reset for April 26, 2016 in open court.

The Court conducted the evidentiary hearing in open court on April
26, 2016.  At the conclusion, the Court ruled upon the objections and
granted in part and denied in part Plaintiff's Motion to Compel (d/e 30).  The
Court found that most of the discovery responses which Plaintiff questioned
in the Motion to Compel were either insufficient or non-responsive and
ordered the Defendant to search for documents and provide proper
responses.  The Court's ruling on Plaintiff's motion to compel was
transcribed and filed of record (d/e 37).  The specific rulings of the Court
will be discussed in the analysis of the Court's ruling on the instant motion.

On June 10, 2016, the Plaintiff filed the Motion for Sanctions (d/e 39) currently before the Court. On June 27, 2016, Defendant filed its Memorandum in Opposition to the Plaintiff's Motion for Sanctions (d/e 42). On July 12, 2016, the Court entered a revised scheduling order.

## ANALYSIS

As noted above, the Plaintiff filed a Third Motion to Compel (d/e 30) on November 25, 2015. On April 26, 2016, the Court ruled on the pending motion to compel. The pending Motion for Sanctions (d/e 39) is filed under Rule 37 of the Federal Rules of Civil Procedure based upon the Court's granting in part the motion to compel on April 26, 2016.

Plaintiff seeks sanctions under Rule 37 of the Federal Rules of Civil Procedure. Rule 37(a)(5) provides that the Court must assess, against the party whose conduct necessitated the motion to compel, the movant's reasonable expenses incurred in making the motion, including attorney's fees, unless the opposing party's response was substantially justified. If the motion is granted in part and denied in part, the court may apportion reasonable expenses of the motion between the parties.

At the April 26, 2016, hearing, the Court ruled that the submissions of the parties showed sufficient good-faith attempts to confer regarding discovery compliance to satisfy the certification provisions of Rule 37(a)(1)

(d/e 37, pg 3).  At the hearing, the Court reviewed with the parties the requirements for compliance concerning Rules 33 and 34 of the Federal Rules of Civil Procedure regarding responding to interrogatories and requests for production.

The Court stated that the party responding to a Request for Production must state in writing, for each category requested, that inspection will be permitted as requested, or if the responding party rejects the request, the basis of the objection to the request.  The Court noted that objections are valid only if they specifically apprise the opposing party and the Court about the nature of the otherwise non-responsive documents the responding party will not produce and that general objections made without elaboration, whether placed in a separate section or repeated by rote, are not objections at all.

The Court indicated that a party has the obligation to seek appropriate extensions from the Court if it can't conduct a careful and thorough search for responsive documents.  The Court noted that a party responding to a Rule 34 production request is under an affirmative duty to seek the information reasonably available to it from its employees or agents or subject to their control to satisfactorily answer the interrogatories or requests to produce.  The requirements noted by the Court were set forth in

Novelty, Inc. v. Mountain View Marketing, Inc., 265 F.R.D. 370, 375-376
(S.D.Ind. 2009).

The requirements for searches for information sufficient to answer
interrogatories are substantially the same as the requirements for
responding to requests for production.  The answers to interrogatories must
be responsive, full, complete, and unevasive.  The answering party cannot
limit answers to matters within his or her own knowledge and ignore
information available to the individual answering the interrogatory or to
persons or sources under that individual's control.  If an appropriate
interrogatory is propounded, the answering party is required to give
information available to the answering party, if any, through his attorney,
investigators employed by him, or on his behalf or other agents or
representative, whether personally known, to the answering party or not.  If
the answering party lacks the necessary information to make a full and
specific answer to the interrogatory, the individual answering the
interrogatory should state under oath the reason for the lack of information
and should set forth in detail efforts made to obtain the information.  Miller
v. Doctor's General Hospital, 76 F.R.D. 136, 140 (W.D.Okla. 1977)

The court in Fautek v. Montgomery Ward & Co., Inc., 96 F.R.D. 141
(N.D.Ill. 1982) summarized the duty of a party responding to discovery and

the standard for imposing sanctions.  The court noted as follows:  . . .

> [A] culpable failure to produce documents in response to a
> request to produce can be the basis for sanctions under
> Fed.R.Civ.P. 37(d).  Parties are required to respond to
> requests to produce in a complete and accurate fashion.
> *(citations omitted)*  This in turn requires that parties take
> reasonable steps to ensure that their responses to requests
> to produce are complete and accurate.  *(citations omitted)*
> Ultimate production of the material in question does not
> absolve a party where it has failed to produce the material in
> a timely fashion.  *(citations omitted)*   Once a failure to
> comply with the discovery rules is established, sanctions are
> appropriate; the degree of culpability is only a factor in
> determining the severity of the sanctions to be applied.
> *(citations omitted)*  Thus, a failure to make discovery, even if
> occasioned by simple negligence, may justify the imposition
> of sanctions. *(citations omitted)*

Id. at pg. 145, 146.

The record before the Court clearly shows that the Defendant either
made little or no attempt to find the information or documents responsive to
the Plaintiff's discovery requests or was aware of responsive information
and did not want to disclose it.

Defendant Nexstar is a large publicly traded corporation whose
primary business is owning and operating television stations in mid-size
markets throughout the United States.  Nexstar owns, operates, and
programs sales and other services to over 100 separate television stations
in 62 market districts in the United States.  While Nexstar has a corporate
headquarters, most of its actual business activities take place in television

stations it owns, operates, or services.  During the time at issue in this lawsuit, individual mail service at the stations that form Nexstar were not linked to the corporate servers (d/e 31, pgs 2-3).

In Plaintiff's Requests for Production, which were the subject of the Motion to Compel for which sanctions are sought, Plaintiff asked for information concerning the formation and operation of the limited liability corporation, Performance Team, LLC, by any personnel of Nexstar Broadcasting, Inc.  In its Request for Production 15 (d/e 30-4, pg 14) and Request for Production 20 (d/e 30-4, pg 17), Plaintiff asked for any documents relating or reflecting any business dealerships, or relationship between Nexstar Broadcasting, Inc. and any of the affiliate stations or personnel with or about Performance Team, LLC.  The answer to both requests for production was the same.  The answer given was as follows:

> Performance Team, LLC was not formed and is not associated with, affiliated with, controlled by or under the control of Defendant and prior to Plaintiff's Complaint, Defendant had no knowledge of this entity whatsoever. Therefore, Defendant does not have any documents which respond to this request.

In an attempt to resolve the discovery disputes regarding the responses to its requests for production set forth above, counsel for the Plaintiff wrote a detailed letter to defense counsel seeking additional responses to the interrogatories and requests to produce (d/e 30-5).

Plaintiff's counsel requested responses to Requests for Production 15 and 20, and indicated that there were at least four high level Nexstar employees with knowledge of Performance Team, LLC.  Plaintiff again requested the documents described in Requests for Production 15 and 20 (d/e 30-5, pgs 6, 7).

Defense counsel sent a letter replying to each of the requests of Plaintiff's counsel for additional information which were not provided in the responses to the interrogatories and requests to produce at issue in the Motion to Compel.  The response to the request for additional information concerning knowledge of Performance Team, LLC was the same for both production requests 15 and 20.  The response given by the Defendant was as follows:

> **THERE WERE NO HIGH LEVEL NEXSTAR EMPLOYEES THAT HAD ANY DEALINGS WITH PERFORMANCE TEAM, LLC AND NONE THAT HAVE ANY ABILITY TO BIND THE CORPORATION.** (capitalization and bold type in original letter) (d/e 30-6, pgs 13, 14)

The responses set forth above both share the same deficiency.  They are bare factual and legal conclusions and give no indication that any attempt was made to determine whether the documents existed or were in the possession of the Defendant.  Simply because the Performance Team, LLC was not formed by, or associated with, or controlled by, the Defendant

does not mean the Defendant does not have documents responsive to the request for production.  Likewise, the factual assertion that no "**HIGH LEVEL EMPLOYEES**" had dealings with Performance Team, LLC and the legal conclusion that employees dealing with Performance Team, LLC do not have the ability to bind the corporation, does not excuse the duty to inquire whether documents dealing with Performance Team, LLC are in the possession of the corporate Defendant.  No assertion was made that the requests were unduly burdensome or overbroad.

While the non-involvement of the corporation with Performance Team, LLC or the ability of Nexstar employees involved with Performance Team, LLC to bind Nexstar may be issues which could be asserted in a summary judgment motion or as a defense at trial, they are not issues which may be asserted to avoid valid discovery requests.

In Defendant's response to the Plaintiff's Motion for Sanctions, the Defendant asserts that the "proportionality" requirements in the recent amendments to Rule 26 instruct the Court to take into consideration the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties resources, and the importance of the discovery, in resolving the issues in the case,

and whether the burden or expense of the proposed discovery outweighs its likely benefit (d/e 42, pg 3).

The Defendant then argues that "this case is in essence a relatively simple breach of contract case".  The Court disagrees.

First, the Plaintiff's Complaint asserts claims for conversion, quantum meruit, and a copyright infringement, in addition to the breach of contract claim contained in Count I of the Complaint.  Second, there was no hint of the issue of proportionality of discovery raised by the Defendant's response to Requests for Production 15 and 20.  In Defendant's brief in opposition to Plaintiff's Motion for Sanctions, the Defendant argues that the activities of two Springfield, Missouri, employees of the Defendant, Helen Agnew and Stacy Boysen-Krauck, who had dealings with the Plaintiff through the entity of Performance Team, LLC, had nothing at all to do with Nexstar Broadcasting, Inc., which neither ratified or authorized any conduct by these employees (d/e 42, pg 4).  Defendant claims that discovery regarding these two employees is not necessary because this is a "relatively straight-forward breach of contract case" and the Plaintiff should not insist on discovery which seems to be based on the contention that some dealings it had with employees of Nexstar Broadcasting station in Springfield, Missouri, is somehow the action of Nexstar Broadcasting, Inc.

These assertions differ greatly from the position taken by Defendant when opposing the Motion to Compel which was granted by the Court. In the Defendant's response to the Plaintiff's Motion to Compel (d/e 31), Defendant's counsel asserted, with regard to the employees of the Nexstar station in Springfield, Missouri, that the legal authority of those employees had nothing to do with discovery, but was an issue to be determined when ruling on the merits of the case. Specifically, with regard to the authority of the Nexstar employees to bind the corporation, Defendant's counsel stated as follows: "While this may be an issue the Court will have to determine at some point during the course of this litigation, it is inappropriate to ask for that determination to be made in the context of the Motion to Compel. The corporate employees' ability to bind the corporation that employs them can be a complex issue, both from a factual and legal standpoint." (d/e 31, pg 4). The Court agrees, in the context of this litigation, that determination regarding the apparent authority of the employees of the Defendant can be a complex issue. The purpose of discovery is not to determine that issue, but to permit the parties to obtain facts which are necessary to make the determination. Defendant's objections to Requests for Production 15 and 20 stated above are based clearly upon only the legal theory asserted in

the Defendant's defense on the merits and not the inquiry for evidence which is necessary to determine that legal issue on the merits.

The Defendant's answer to paragraph 21 of Plaintiff's Request to Produce shows a continuation of the same type of answer.  Request for Production 21 requested all documents relating to or reflecting all dealings of the Defendant, and any affiliate stations or personnel, with Blue Host and Red Crow Marketing.  Defendant's response was as follows:

> Defendant has no knowledge of these entities; therefore, Defendant does not have any documents with which to respond to this request.

Again, the answer reflects no search for documents, only the bald assertion that because the Defendant does not know of the entity, it has no documents mentioning Blue Host or Red Crow Marketing.

Based upon the exhibits to the Motion for Sanctions and the Memorandum in Opposition to the Plaintiff's Motion for Sanctions, it is apparent that Defendant had in its possession documents responsive to Plaintiff's Request for Production of Documents requested above at the time that it made the non-responsive assertions of fact and legal theory to Requests for Production 15, 20, and 21 discussed above.

A review of the exhibits mentioned above show the Defendant had in its possession emails of its former employee Helen Agnew which indicated

that she received the Certificate of Organization and Articles of Incorporation for Performance Team, LLC, as well as a draft operating agreement for that entity (d/e 42, pg 13) (d/e 42-17, pg 1).  Likewise, it is obvious from documents produced after the Motion to Compel was granted that Defendant had other documents which were responsive to the requests to produce discussed above.

As noted in the factual summary above, the responses to the interrogatories and requests for production at issue in the Motion to Compel and this Motion for Sanctions were served on the Defendant on August 14, 2015 (d/e 23).  The discovery responses were signed by Nexstar employee Brian Jones.

After the Court granted the Motion to Compel, Defendant produced, among other responsive documents, an eight-page Incident Investigation Report dated July 23, 2014 dealing with the termination of Nexstar employee Helen Agnew (d/e 40-18, pgs 2-10).  The Incident Investigation Report was sent with an email from Nexstar's then Associate Counsel and Human Resources Director (d/e 40-18, pg 11).  Brian Jones, the Nexstar employee who signed both the answers to interrogatories and the response to request for production at issue in this case, was copied on the email

which transmitted the Incident Investigation Report.  The report is clearly responsive to the document production requests cited above.

The report notes that Nexstar employee Helen Agnew used her Nexstar email to communicate with the Plaintiff regarding her private business project and in numerous communications seemed to imply that Nexstar corporate sanctioned her joint venture and would be rolling out Agnew's product company-wide (d/e 40-18, pg 2).  The report indicates that it appears Agnew engaged in development and promotion of her business during Nexstar's normal business hours (d/e 40-18, pg 2).

The report also concludes that a Power Point presentation developed by Agnew to promote her business gives the impression that her business is a Nexstar project (d/e 40-18, pg 4).  The report noted that another document also gives the impression that Agnew's business is a Nexstar project (d/e 40-18, pg 4).  The report also indicates that Agnew disclosed to Nexstar her interest in Performance Team, LLC and another business in 2011, and represented that her activities were not in conflict with Nexstar. Station General Manager Mark Gordon acknowledged there was no conflict (d/e 40-18, pg 8).  The report also gives details regarding Nexstar's employee's dealings with Red Crow Marketing and the introduction of Red Crow Marketing representatives to the Plaintiff.  These communications

with the Plaintiff were made using Nexstar email accounts (d/e 40-18,

pg 2).  This information was responsive to the request for production.

The Incident Investigation Report had been prepared almost a year

before Brian Jones signed the answers to interrogatories and the

responses to requests for production, and a copy of the Incident

Investigation Report appears to have been sent to Jones at that time (d/e

40-18, pg 1).  These facts clearly support the inference that no search was

done for materials which were responsive to the requests for production of

documents or that the Defendant did not want to produce the documents

which contained information which did not support its factual and legal

assertions in the answers to Requests for Production 15, 20, and 21.

These facts clearly show, at least, that the responses to the requests for

production discussed above were negligent and could support an inference

that the failure to properly respond to the discovery requests or conduct a

search may have been done in bad faith.  Either inference is sufficient to

warrant sanctions.

The Defendant urges that the Court apply the formulation developed

by the Sixth Circuit in <u>Freeland v. Amigo</u>, 103 F.3d 1271, 1277 (6th Cir.

1997), to determine whether sanctions are warranted.  The four factor test

applied in <u>Freeland</u> involved a review of a court administering a sanction

which resulted in dismissal of the case.  In <u>Freeland</u>, the court imposed a discovery sanction precluding the use of the plaintiff's expert witness which resulted in dismissal with prejudice of the case for failure to comply with the discovery cut-off date, even though the defendant had agreed to depose two of the plaintiff's experts after discovery cut off.  This case does not involve the draconian sanction of dismissal with prejudice.  The Plaintiff does not request such a sanction and requests only the attorney's fees incurred by the necessity of filing the motion to compel to assure proper discovery responses.  In the decision in <u>Maynard v. Nygren</u>, 332 F.3d 462 (7th Cir. 2003), the Seventh Circuit noted that it reviews discovery sanctions for abuse of discretion standard.  The Seventh Circuit held that there must be clear and convincing evidence before a court invokes the "draconian" sanction of dismissal of the case.  <u>Id</u>. at 467.  The court went on to note that there must be clear and convincing evidence of willfulness, bad faith, or fault before dismissing the case as a discovery sanction.  <u>Id</u>. at 468.  The court also noted that other non-dismissal sanctions are generally permissible even without clear and convincing evidence.  <u>Id</u>. at 469.

The deficiencies with Defendant's responses to interrogatories and Requests for Production 15, 20, and 21, stated above also apply to other answers to the discovery requested by the Plaintiff.  For instance, Plaintiff's

Interrogatory 21 requested that the Defendant identify any documents

relevant to any aspects of the lawsuit which had been lost, misplaced, or

destroyed and requests identification of the document, describe how it was

lost, misplaced, or destroyed.  The Defendant's answer was as follows:

> As a matter of practice, Defendant does not require
> employees (corporate or station level) to save files and data
> to a central location. Each Individual corporate employee
> may determine whether to save information to the corporate
> servers or their individual computer hard drive. At the station
> level, no local file servers are connected to the corporate
> servers and station level employees may determine whether
> to save information to a local server or their individual
> computer hard drive. All individual computers are wiped and
> repurposed upon the departure of any employee. With
> respect to electronic communications, Defendant's online
> email mailboxes are configured to retain deleted information
> for fourteen days (unless subject to a litigation hold). In
> addition, each user has the ability to remove or delete any of
> his or her own emails from the system. Defendant does not
> save electronic data created by former employees. Due to
> the passage of time between the termination date of the
> contract with plaintiff and the present date, the Defendant
> has undergone numerous changes to its information
> technology systems which renders older data inaccessible.

The form of the answer indicates that Defendant's answer is based

upon "a matter of practice" and did not involve any effort to ascertain a

specific answer to the interrogatory.  The answer discloses no attempt to

find out if any relevant documents had been lost, misplaced, or destroyed.

Substantially the same answer was made to Requests for Production

5, 6, 12, 17, and 24.  Some of those responses, in addition to the answer

stated above, added conclusory allegations about burden or cost. Again, the answers to the specific requests for production were non-responsive in that there was no indication any search was made to determine whether responsive documents existed. The fact that the Defendant may have been inconvenienced by making individual inquiries for specific radio stations does not excuse the use of a boilerplate answer which discloses no attempt to determine whether the information exists and only recites things that are done "as a matter of practice". The documents described above with regard to Requests for Production 15, 20, and 21 indicate that a search made after the Court granted the Motion to Compel yielded documents which were not previously produced.

The Plaintiff indicates that 238 Word documents, spreadsheets, emails, image files, and Power Point presentations were submitted along with supplemental answers and responses to discovery requests after the Court granted the Motion to Compel (d/e 40, pg 5).

The Court finds that the responses and objections made by the Defendant to the interrogatories and requests to produce before the Court at the Motion to Compel hearing were not justified for requests to compel discovery which the Court granted in total or in part.

PREPARATION OF PRIVILEGE LOG

In its Motion for Sanctions, the Plaintiff requests sanctions because the Defendant did not provide a "discovery log" (d/e 40, pg 14).  From the text of Plaintiff's motion, it is apparent that Plaintiff is referring to the submission of a privilege log for information withheld by the Defendant on the basis of attorney client privilege, or attorney client work product, or both.  In its response to Plaintiff's Request for Production 3, the Defendant asserted attorney client privilege and attorney work product privilege (d/e 30-4, pg 6).  In its response to Request for Production 4, the Defendant asserted attorney client privilege (d/e 30-4, pg 7).

In its response to Plaintiff's motion, Defendant asserts that "if a privilege log is an essential element in discovery, the Defendant is still awaiting a privilege log from the Plaintiff, who never provided one either".  Defendant does not specify whether the Plaintiff has asserted attorney client privilege in response to discovery sought by the Defendant.  If no attorney client privilege or other privilege is asserted, there is no requirement for production of a privilege log.

The Defendant argues that a privilege log is not required by Rule 26(b)(5)(A)(ii).  That Rule requires that, upon the assertion of privilege, a party withholding information based on privilege, must describe the nature

of the documents, communications, or tangible things not produced, and do
so in a manner that, without revealing the privileged information, enables
the other parties to assess the claim.  While Rule 26 does not specifically
refer to a privilege log, compliance with Rule 26 is normally done through
the submission of a privilege log.

When ruling on the Plaintiff's Motion to Compel regarding its Request
for Production 4, the Court ordered that a log should be kept if there are
any documents withheld on the basis of attorney client privilege and made
the same ruling with respect to Request for Production 4, with the
exception of communication between the existing counsel and the
Defendant.  The Court twice ordered the Defendant to prepare privilege
logs for materials withheld on the basis of attorney client privilege (d/e 37,
pgs 10, 11).

Rather than preparing a privilege log as ordered by the Court, the
Defendant transmitted to the Plaintiff redacted emails containing the date of
the email, the person sending the email, and the names of the recipients of
the email and the "In re:" line generally describing the subject matter of the
email.

The assertion of attorney client privilege or attorney work product
privilege is typically met through the creation of a privilege log that

"particularly and clearly sets forth the specific grounds for asserting privilege or protection" as to each item.  <u>Cunningham v. Smithkline Beecham</u>, 255 F.R.D. 474, 480 (N.D.Ind. 2009).  An attorney asserting privilege must timely support that claim with a "privilege log" which describes the nature of each document being withheld.  <u>Hobley v. Burge</u>, 433 F.3d 946, 947 (7th Cir. 2006).  It is necessary that the privilege log specifically state the privilege which is asserted.  Here, the Defendant has asserted both attorney client privilege and attorney work product privilege.

It is impossible for the Court to tell whether the redacted emails contain sufficient information for the Plaintiff to assess the validity of the claim of privilege.

The Court ordered the Defendant to prepare a privilege log in order to ensure that the Plaintiff would have sufficient information to assess any assertion of privilege made by the Defendant.  The Defendant is ordered to produce privilege logs as ordered by the Court, for each document withheld on the basis of attorney client privilege or attorney work product privilege, with an exception for communication with counsel of record, stating the following:

1)    The privilege asserted;

2)    A general description of the document by type  (e.g. letter,

memorandum, report);

3)      The date of the document;

4)      A general of the subject matter of the document;

5)      The name and job title of the author or originator of the

document; and,

6)      The name of the person who received a copy of the document

and their affiliation with the Defendant.

These privilege logs must be submitted to the Plaintiff within twenty-

one (21) days of the entry of this Opinion and Order.

## SPOLIATION OF EVIDENCE LOCATED ON
## TODD HARTSELL'S COMPUTER

The Plaintiff previously filed a Motion for Sanctions Due to Spoliation

of Evidence (d/e 25) and Brief in Support of that motion (d/e 26).  The

Plaintiff in its interrogatories to Defendant asked Defendant to identify each

communication between Defendant's employee, Todd Hartsell, and any

other employees in the Monroe, Louisiana, market from January 3, 2013 to

February 28, 2013, which regarded a specific product and/or the Plaintiff.

(Plaintiff's Interrogatory 22, d/e 30-3, pg 17).  In response to that

interrogatory, the Defendant indicated that Hartsell's computer was re-

imaged in November or December 2014 and Hartsell lost all documents

and data saved by him on his computer's hard drive during the re-imaging.

The Plaintiff asserted in the spoliation motion that the re-imaging of the computer constituted spoliation of evidence.  In its memorandum in support of the spoliation motion, the Plaintiff contended that on December 31, 2012, the Plaintiff contacted the Defendant to pursue a financial settlement of the dispute which led to this lawsuit.  The Plaintiff asserted that in emails sent in February, April, and May of 2013, Mr. Hartsell indicated to the Plaintiff that his legal department was involved.  The Plaintiff then stated that the Defendant received a copy of the Complaint from the Plaintiff on May 21, 2014.  This litigation was filed on August 11, 2014.  Finally, the Plaintiff indicated that on October 22, 2014, discovery requests were sent to the Defendant which specifically requested information that could have reasonably existed on Hartsell's computer.

Based upon the prior notice given to the Defendant and Mr. Hartsell of the litigation, the Plaintiff urged that Defendant should be sanctioned for spoliation of evidence.  In its response to the Plaintiff's spoliation motion, the Defendant noted that the Plaintiff had not deposed either Hartsell or any of Defendant's information technology personnel to inquire about the facts or circumstances regarding the re-imaging of the hard drive.

On November 20, 2015, the Court denied Plaintiff's Motion for Sanctions Due to Spoliation of Evidence without prejudice with leave to re-

file.  Plaintiff has elected not to re-file the spoliation motion dealing with the re-imaging of Mr. Hartsell's computer, but has raised the issue in its Motion for Sanctions currently before the Court.

After this Court granted the Plaintiff's Motion to Compel, the Defendant filed supplemental discovery responses (d/e 40-19).  In the supplemental response to Interrogatory 22 filed by the Defendant, Defendant indicated that subsequent investigation had determined that Hartsell's computer crashed in the Spring of 2013, not in November of 2014 as originally stated and Mr. Hartsell's computer was upgraded in April of 2015.

In the pending Motion for Sanctions, the Plaintiff asserts that Defendant's "attempt to backdate Hartsell's computer crash" seems "suspicious and ingenuine (sic)".  Plaintiff's suspicions, however, do not provide evidence that the explanation given under oath in the interrogatory answer is not true.  The supplemental answer does indicate an incomplete or insufficient inquiry was made by the Defendant in responding to Plaintiff's initial discovery requests.

Based on the Defendant's supplemental discovery response, Hartsell's computer crashed prior to the filing of this lawsuit and prior to the service of the discovery requests on the Defendant.  As noted, the Plaintiff

did not renew their original motion for sanctions for spoliation regarding Hartsell's computer.  Consequently, the Court declines to rule that sanctions be imposed for the actions described in the supplemental discovery response to Plaintiff's Interrogatory 22.

PRODUCTION OF MARKET PACKS

At the hearing on the Motion to Compel, the Court ordered the Defendant to provide market packs for inspection and copying (d/e 37, pg 12).  This ruling was made over the Defendant's objection that the Plaintiff already had the market packs.  The Court noted that just because the Plaintiff had the market packs doesn't mean there wasn't some alteration or notation made on the market packs that were transferred from the Plaintiff to the Defendant.

In its Memorandum in Support of the Motion for Sanctions, which is currently before the Court, the Plaintiff asserts that "even after the Court ordered them to return the market packs at the April 26, 2016 hearing, the Defendant still refuses to do so" (d/e 40, pg 16).  The Plaintiff indicates that although the Defendant states in its supplemental discovery response that it is turning over a copy of the original market packs, the document was not found in discovery provided to the Plaintiff and there is no reasonable explanation for the Defendant's refusal to provide the information.  The

Defendant responds that Defendant uploaded market packs to a secure
server and then emailed Plaintiff's counsel a link to allow him to download
the market packs (d/e 42, pg 17).  Accompanying the Defendant's
response is a copy of an email providing the link to the market packs
(d/e 42-19, pg 1).  In reviewing the email, it is not clear from the face of the
email that this email was directed to the Plaintiff.  The email indicates that
no annotations were made to the market packs, but, as the Defendant was
ordered to produce them, they can be retrieved at the link provided in the
email.  If the email link was specifically sent to the Plaintiff with the
unannotated market packs, this is sufficient compliance with the Court's
order.  If the link was not provided to Plaintiff, Defendant is directed to
provide the link which gives access to the market packs to Plaintiff's
counsel.  Based on the representation made by defense counsel that the
link was emailed to Plaintiff's counsel, the Court declines to impose any
sanction for failure to provide the market packs pursuant to the Court's
order.

### AWARD OF SANCTIONS FOR DISCOVERY VIOLATIONS

In its Motion for Sanctions, the Plaintiff requests that the Court order
the payment of its attorney's fees as set forth in the Motion.  The Motion
requests payment of three separate and distinct sets of attorney's fees (d/e

2192-SEM-TSH   # 46   Page 29 of 35

39, pg 2).  The Plaintiff requests that the Court order the following

attorney's fees to be paid as a discovery sanction:

     1)    $2,655 in attorney's fees for hours billed on Plaintiff's Second

Motion to Compel dated September 16, 2016;

     2)    $4,620 in attorney's fees for hours billed on Plaintiff's Motion for

Sanctions for Spoliation of Evidence dated September 16, 2015;

     3)    $13,090 in attorney's fees for hours billed on Plaintiff's Third

Motion to Compel dated November 25, 2015, and for hours billed in

preparation for, and attendance at, the April 26, 2016 hearing on the Motion

to Compel.

     The Plaintiff attached detailed hourly billings to its Motion for

Sanctions (d/e 39) as Exhibits A, B, and C.  In its Memorandum in

Opposition to the Motion for Sanctions (d/e 42), Defendant first objects to

the award of any attorney's fees.  Defendant then makes specific

arguments supporting their contention that the attorney's fees which the

Plaintiff seeks are grossly overstated and not in compliance with "the rules".

     Magistrate Judges are authorized to rule on any pretrial matter,

except for eight specific matters listed in enabling statute generally referred

to as "dispositive matters".  The award of sanctions against a party for

discovery violations is a non-dispositive matter over which a Magistrate

**Page 29** of **35**

Judge has jurisdiction.  It is within the Magistrate Judge's authority and discretion to award sanctions for discovery violations.  <u>Gardendance, Inc. v. Woodstock Copperworks, Ltd.</u>, 230 F.R.D. 438, 447-448 (M.D.NC 2005) (affirming Magistrate's award of discovery sanctions of $8,909.79 for failure of party to appear at depositions).

The Defendant makes several specific objections to the Plaintiff's fees sought to be awarded as a sanction.  The first objection argues that Rule 37(a)(5)(A) only allows the award of reasonable expenses, including attorney's fees, related to filing and presentation of the motion upon which the court granted relief.

Exhibit A to Plaintiff's Motion for Sanctions (d/e 39-1) seeks attorney's fees for the hours billed on Plaintiff's Second Motion to Compel dated September 16, 2016 (d/e 39-1, pg 2).  The Court finds no Second Motion to Compel filed on September 16, 2016.  The Plaintiff's Second Motion to Compel appears to have been filed on September 16, 2015 (d/e 24).  The Court assumes this is the motion to which the Plaintiff refers.  That motion to compel was denied as moot by the Court in its Text Order of October 7, 2015.  Consequently, no fees will be awarded for the Motion (d/e 24).

Plaintiff next seeks award of attorney's fees for Plaintiff's Motion for Sanctions Due to Spoliation of Evidence dated September 16, 2015.  It

appears the Plaintiff is referring to Plaintiff's Motion for Sanctions Due to
Spoliation of Evidence filed on September 16, 2015 (d/e 25).  That motion
was denied by the Court's Minute Entry of November 20, 2015.  No fees
will be awarded for that Motion (d/e 25).

Defendant objects that the Plaintiff's Motion to Compel was
"unnecessarily lengthy and detailed".  This was caused, in part, due to the
number of objections and non-responsive answers made by the Defendant.
As noted below, the Court granted the vast majority of the requests to
compel discovery presented by the Plaintiff in its Motion to Compel.  The
attorney's fees awarded are apportioned below to reflect the denial, in
whole and in part, of some of the Plaintiff's requests to compel discovery.
Moreover, the Defendant made no attempt to strike a portion of the Motion
to Compel for failure to comply with the Local Rules of the Central District
of Illinois based upon page limitations.

The Court has reviewed the billings submitted by the Plaintiff seeking
attorney's fees for the preparation of the Motion to Compel (d/e 30).  The
billing is attached to the Motion for Sanctions (d/e 39) as Exhibit C (d/e 39-
3).  The billing appears to charge a rate of $150 per hour.  Defendant
raises no objection to the billing rate and the Court finds that the billing rate
is reasonable.  In reviewing the billing, it appears that 9.3 hours of the time

billed either does not specifically relate to the Motion to Compel or is insufficiently documented to allow the Court to award fees for the time represented by the billing entry.[1]  Exclusion of the 9.3 hours, when multiplied by the hourly rate charged results in a reduction of $1,395.

Defendant also objects because the claim for attorney's fees makes no attempt to apportion the attorney fees based on degree of success obtained by the Plaintiff.  The Defendant asserts that such a reduction is required by Rule 37(a)(5)(C).  The Defendant is correct.  If a motion is granted in part and denied in part, the Court is directed to apportion the reasonable expenses for the motion.  The Court ruled on 24 requests to compel discovery.  The Court granted 19 of the Plaintiff's requests.  The Court granted 17 requests to compel in total, two requests to compel in part, and denied five of the Plaintiff's requests (d/e 37).  The Court denied approximately one-fourth of Plaintiff's requests to compel.  The Court determines that the award of attorney's fees should be reduced by twenty-

---

[1] Specifically, the Court makes the following reduction for hours billed on the following dates:  1) 11/11/2015 discounted by 1.5 hours for telephone discussion with Plaintiff – there is no indication that the telephone discussion relates to the Motion to Compel;  2) 12/15/2015, .4 hour – the billing does not specify what portion of the time was related to "other email exchanges . . . about depositions";  3) 2/9/2016, .7 hour – billing relates to Motion to Continue Scheduling Order dates;  4) 2/11/2016, .2 hour – no specification that the reviewed email relates to Motion to Compel;  5) 2/17/2016, .1 hour – no specification that emails relate to Motion to Compel;  6) 2/22/2016, 1.1 hours – billing has no specification as to the nature of "internal discussion";  7) 2/23/2016, .8 hour – billing deals with Motion to Continue Scheduling Order;  8) 3/11/2016, .1 hour – no specification that the emails relate to Motion to Compel;  9) 3/26/2016, .2 hour – no specification that the emails relate to Motion to Compel;  10) 3/28/2016, discounted by .2 hour for telephone call related to settlement negotiations and depositions;  11)  4/6/2016, .4 hour – no detail as to emails reviewed;  12) 4/15/2016, 2.0 hours – no specification of relation to Motion to Compel;  13) 4/19/2016, 1.4 hours – no specification as to nature of documents reviewed and relation to Motion to Compel;  14) 5/16/2016, .2 hours – does not relate to presentation of Motion to Compel.

five percent as reasonable apportionment for the success of the Plaintiff in its Motion to Compel.

Defendant argues that Plaintiff is attempting to overreach on its claim for attorney's fees under Rule 37.  Defendant cites Criterion 508 Solutions, Inc. v. Lockheed Martin Services, Inc., 255 F.R.D. 489 (S.D.Iowa 2008).  In Criterion, the court refused to award over $12,000 in attorney's fees on a motion to compel a deposition.  The court in Criterion was faced with a situation where the plaintiff had refused to appear at his own deposition. The court refused to award $12,000 in fees on a motion to compel a deposition which the defendant knew would not occur as scheduled.  Id. at 496.  Failure to attend a deposition is a single discreet factual situation which requires little analysis or explanation.  In contrast, the Motion to Compel herein required the detailing of multiple responses to discovery and an explanation of the factual basis surrounding those responses, including efforts to clarify the responses in detailed letters exchanged by Plaintiff and defense counsel.  As noted above, however, the court in Gardendance, Inc. v. Woodstock Copperworks, Ltd., 230 F.R.D. 438 (M.D.NC 2005) affirmed the magistrate's award of discovery sanctions of nearly $9,000 for a failure of a party to appear at a deposition.  The amount of sanctions depends

upon the factual situation involved in the discovery and on the factual circumstances of the discovery dispute involved.

Defendant also argues that a clearly outrageous fee claim is sufficient grounds for the court to summarily deny any fees as a sanction for attempting to clearly claim more than is justified.  Defendant cites <u>Brown v. Stackler</u>, 612 F.2d 1057 (7th Cir. 1980).  The court in <u>Brown</u> declined to grant a fee request of a plaintiff where the attorney's work consisted mostly of motions for extension of time, as the six-page complaint filed by plaintiff's counsel raised an issue which everyone knew would be controlled by the results of litigation pending in other courts and plaintiff was simply awaiting the outcome of a Supreme Court case.  Counsel in that case attempted to bill 800 hours for their work.  That fact pattern is clearly distinguishable from the situation before the Court in this case.

Plaintiff requests $13,090.00 in fees be awarded as a sanction.  After deduction of the $1,395 for the time entries disallowed by the Court, the amount of the fee request is reduced to $11,695.  Reduction of that amount by twenty-five percent ($2,923.75) results in a reduction of the fees requested to $8,771.25.  Plaintiff is awarded that amount as a sanction against the Defendant for the Defendant's non-disclosure and improper

responses, and objections to the Plaintiff's discovery requests which were made without substantial justification.

## CONCLUSION

THEREFORE, IT IS ORDERED that Plaintiff David Mizer Enterprises, Inc.'s Motion for Sanctions (d/e 39) is ALLOWED in part.  Defendant Nexstar Broadcasting, Inc. is ORDERED to pay the sum of $8,771.25, as set forth in detail above, within thirty (30) days of the entry of this Opinion and Order.

ENTERED:   August 31, 2016

___s/ Tom Schanzle-Haskins_____
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE