IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DAVID MIZER ENTERPRISES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | No. 2:14-CV-02192 |
| NEXSTAR BROADCASTING, INC., | ) ) | |
| Defendant. | ) ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on Plaintiff David Mizer Enterprises, Inc.'s Motion for Summary Judgment (d/e 57). Because genuine issues of material fact remain, the Motion is DENIED.

## I. FACTS

Plaintiff is a corporation that provides technology services across the United States. David Mizer (Mizer) is the president of Plaintiff. Plaintiff created a business model and supporting technology for providing services to automobile dealers, which

included a system to manage inventory and facilitate web-based automobile shopping.

Defendant is a telecommunications company that operates television stations throughout the country. Defendant wanted to use Plaintiff's product with its current and prospective automotive dealership advertising customers.

On or about August 27, 2008, the parties entered into a written Licensing Agreement with a term from January 1, 2008 through December 31, 2010. The Agreement did not specify an automatic extension beyond the stated termination date. The Agreement provided that either party could terminate the Agreement without cause upon 60 days written notice and immediately for any breach of the Agreement. In addition, Defendant could have terminated its obligations under the Agreement by simply not deploying Plaintiff's software to any of Defendant's stations. Defendant never provided a notice of termination to Plaintiff during the term of the Agreement. The Agreement terminated on December 31, 2010.

The Agreement allowed Defendant to host propriety and copyrighted pages (code)[1] owned by Plaintiff on Defendant's servers. Defendant had the ability to add and remove the software from its television stations' websites. Plaintiff's software allowed Defendant's television websites to carry a webpage that visitors to the website could use to search for new and used cars in their local market.

Plaintiff was not responsible for the end revenue or profit Defendant received from the advertising relationships Defendant entered into with the automobile dealerships. Instead, Plaintiff provided the infrastructure for managing the data related to the automobile web sales and hosted the content of such data. Plaintiff was also responsible for troubleshooting any problems that arose.

Under the Agreement, Defendant could use Plaintiff's proprietary software and business model for three years in exchange for certain fees as outlined in Appendix A of the Agreement. Plaintiff charged a monthly base fee per dealership. If

[1] Plaintiff appears to use the terms "code," "software," "program," "proprietary software," and "software code" interchangeably. The Court will attempt to use the same terms Plaintiff uses in each section of Plaintiff's Motion.

Plaintiff provided the data source—which the Agreement defined as the means by which information about specific automobiles is gathered and provided to Plaintiff—Plaintiff charged a one-time set up fee and an additional charge per month per dealership. A cap of $1,000 per month per market area applied to pre-owned vehicles.

Appendix A provided that Defendant would pay Plaintiff each month the amount due pursuant to the fee schedule. The Agreement did not indicate whether Plaintiff would submit invoices or whether Defendant would calculate on its own the amounts due. In April 2008, approximately four months after Defendant began using Plaintiff's program, Ambrose Rivera, Plaintiff's contact person with Defendant at that time, emailed Plaintiff asking for the total amount Defendant owed to date for Plaintiff's work. In response to that request, Plaintiff set up an aggregated markets link, which allowed Defendant to review the participating dealerships for each of Defendant's station websites. By doing so, Defendant had the ability to track the program billing. While it appears that Defendant paid Plaintiff in accordance with Rivera's request, Defendant failed to pay Plaintiff for the use of Plaintiff's propriety software and business model during the remaining term of the Agreement. See

April 5, 2013 email (Mizer telling Rivera's replacement, Todd Hartsell, that Mizer believed Defendant paid the invoices submitted per Rivera's request; Hartsell no longer works for Defendant).

In December 2012, Plaintiff contacted Defendant to discuss Defendant's nonpayment. Plaintiff submitted a spreadsheet with market and billing information for the entire term of the Agreement. Defendant denies that Plaintiff is entitled to payment under the Agreement because of Plaintiff's poor performance and because the late submission of invoices deprived Defendant of the information needed to verify Plaintiff's claims. Defendant did not, however, raise the affirmative defense of waiver in its Answer.

The Agreement also prohibited Defendant from using, making available, selling, disclosing, or otherwise communicating to any third party Plaintiff's confidential information, either during or after the Defendant's relationship with Plaintiff, without prior written approval of Plaintiff's president. In addition, the Agreement required Defendant to immediately deliver to Plaintiff all copies of all materials and writings belonging to Plaintiff when the relationship ended. Plaintiff asserts that Defendant violated this provision because Defendant continued to use Plaintiff's product

after the contract term expired, specifically from January 1, 2011 until early February 2013. Plaintiff also asserts that Defendant's station's websites generated 126 leads[2] after the Agreement expired. Defendant disputes this, asserting that Defendant disabled the program but that it was possible that cached[3] pages of the inactive web pages might be accessible under certain circumstances.

Plaintiff also brings claims relating to the development of a potential website named Auto Buy Cell. The idea behind Auto Buy Cell was to allow customers to use their cellphone to scan a code on an automobile dealer's vehicle and pull up information about that vehicle. The parties agree that Helen Agnew, who worked for Defendant at that time, was in charge of developing Auto Buy Cell. The parties dispute whether Agnew acted for her own benefit or in her capacity as an employee for Defendant.

_____

[2] At his deposition, David Mizer explained that a lead is a contact form completed by a potential customer who is using the website. Mizer Dep. at 187-88.

[3] Cache "stores recently used information so that it can be quickly accessed at a later time. . . . Most web browsers cache webpage data by default. For example when you visit a web page, the browser may cache the HTML, image, and any CSS or JavaScript files reference by the page. When you browse through other pages on the site that use the same images, CSS, or JavaScript, your browser will not have to re-download the files. Instead, the browser can simply load them from the cache, which is stored on your local hard drive." https://techterms.com/definition/cache (last visited October 18, 2017).

Plaintiff's involvement with Auto Buy Cell began in early 2011. Agnew testified that she involved Plaintiff not to develop software but to find a way of getting dealer inventory to the Auto Buy Cell program.

In June 2012, Plaintiff disconnected from the Auto Buy Cell project. At this time, the project had only advanced to the point that it was a test site for developmental purposes. Plaintiff claims that, despite disconnecting from Auto Buy Cell, Defendant copied Plaintiff's actual software code without Plaintiff's authorization. Agnew claims that the webpage and software that appeared on the Auto Buy Cell website was her creation.

## II. LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When ruling on a motion for summary judgment, the court must consider the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. Blasius v. Angel Auto., Inc., 839 F.3d 639, 644 (7th Cir. 2016). No genuine issue of material fact exists if a reasonable jury could not find in favor of the nonmoving party. Brewer v. Bd. of Trs. of the Univ. of Ill., 479 F.3d 908, 915 (7th Cir. 2007).

## III. ANALYSIS

Plaintiff brings claims for breach of contract related to Defendant's use of Plaintiff's program during the three-year term of the Agreement. Plaintiff brings claims for breach of contract, conversion, quantum meruit, and copyright infringement for Defendant's alleged use of Plaintiff's program after the expiration of the Agreement. Finally, Plaintiff brings claims for conversion and copyright infringement for Defendant's alleged use of Plaintiff's proprietary software related to Plaintiff's work for Auto Buy Cell.

**A.    Plaintiff is Not Entitled to Summary Judgment on the Breach of Contract Claims (Count I)**

The parties agree that Illinois law governs the Agreement.[4]  To establish a breach of contract, Plaintiff must prove (1) the existence of a valid and enforceable contract; (2) performance by Plaintiff; (3) breach of contract by Defendant; and (4) resultant injury to Plaintiff.  <u>Burkhart v. Wolf Motors of Naperville, Inc. ex rel. Toyota of Naperville</u>, 2016 IL App (2d) 151053, ¶ 14 (2016).

Plaintiff claims that the undisputed facts demonstrate that Defendant breached the Agreement by (1) failing to pay Plaintiff for the use of Plaintiff's program during the term of the Agreement, (2) using Plaintiff's program after the Agreement terminated, and (3) providing Plaintiff's proprietary software to third parties related to the Auto Buy Cell platform.  Plaintiff seeks damages in the amount of $299,175 for Defendant's use of Plaintiff's program during the

---

[4] In the Complaint, Plaintiff alleges that this Court has diversity jurisdiction over all of the claims pursuant to 28 U.S.C. § 1332.  <u>See</u> Compl. ¶ 1.  The Court notes, however, that Plaintiff brings a federal claim under the Copyright Act, which vests the Court will original jurisdiction pursuant to 28 U.S.C. § 1331.  Where a court has original jurisdiction pursuant to § 1331, the court has supplemental jurisdiction over state law claims that form part of the same case or controversy.

term of the Agreement.  Plaintiff seeks an additional $33,750 for Defendant's use of the program following the end of the Agreement.

In response to the Motion for Summary Judgment, Defendant argues that Plaintiff breached the covenant of good faith and fair dealing and performing poorly under the Agreement.[5]  Defendant's good faith and fair dealing argument presumes that Plaintiff was required to submit invoices to Plaintiff.

Under Illinois law, "every contract contains an implied covenant of good faith and fair dealing."  Suburban Ins. Servs., Inc. v. Va. Sur. Co. Inc., 322 Ill.App.3d 688, 693 (2001).  To establish a breach of the duty of good faith and fair dealing, Defendant must show that (1) the contract vested Plaintiff with discretion in performing an obligation under the contract; and (2) that Plaintiff exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the parties.  See LaSalle Bank Nat'l Ass'n v. Paramont Props., 588 F. Supp. 2d 840,

---

[5] Even if the breach of the duty of good faith and fair dealing were an affirmative defense that Defendant failed to plead, the affirmative defense is forfeited only if Plaintiff is harmed by Defendant's delay in raising the defense. See Carter v. United States, 333 F.3d 791, 796 (7th Cir. 2003).  Plaintiff has responded to the defense without objection.  Therefore, the Court finds that Plaintiff was not harmed, and the defense was not forfeited by Defendant.

857 (N.D. Ill. 2008).  The implied covenant of good faith and fair dealing guides the construction of a contract and aids the court in determining the intent of the parties where a provision is susceptible of two conflicting constructions.  See LaSalle Bank Nat'l Ass'n v. Moran Foods, Inc., 477 F. Supp. 2d 932, 937 (N.D. Ill. 2007); Fox v. Heimann, 375 Ill. App. 3d 35, 42 (2007).

When construing a contract, the court's primary objective is to give effect to the parties' intent.  Gallagher v. Lenart, 226 Ill. 2d 208, 232 (2007).  The court gives the language in the contract its plain and ordinary meaning.  Id. at 233.  If the contract's language is susceptible to more than one meaning, the contract is ambiguous.  Id.  When a contract is ambiguous, the court may consider extrinsic evidence to determine the parties' intent.  Id.[6]

A court construes a clear and unambiguous contract as a matter of law.  Storino, Ramello & Durkin v. Rackow, 2015 IL App (1st) 142961 ¶ 18.  When a contract is ambiguous, however, the interpretation of the contract is a question of fact for the jury unless

---

[6] The Agreement contains a provision providing that the normal rule of construction that any ambiguities are resolved against the drafting party shall not be employed in the interpretation of the Agreement.  Agreement ¶ 11(vv).

the extrinsic evidence is undisputed.  <u>Lakeview Collection Inc. v.</u>

<u>Bank of Am., N.A.</u>, 942 F. Supp. 2d 830, 849 (N.D. Ill. 2013).

The Court finds the Agreement ambiguous.  While the Agreement provides for payment by Defendant to Plaintiff each month, the Agreement is ambiguous whether Plaintiff was required to submit invoices or whether Defendant was required to determine what it owed and submit payment to Plaintiff.  And, if Plaintiff was required to bill Defendant and failed to do so, Plaintiff may have breached the implied covenant of good faith and fair dealing.  <u>Kipnis</u> <u>v. Mandel Metals, Inc.</u>, 318 Ill. App. 3d 498, 505 (2000) ("Whenever the cooperation of one party is necessary for the other party's performance, there is an implied condition that such cooperation will be given.").

Because extrinsic evidence is required to determine the parties' intent, a question of fact remains.  Plaintiff is not entitled to summary judgment on its claim for breach of contract for Defendant's failure to pay under the Agreement.  In light of this holding, the Court need not address Defendant's additional argument that Plaintiff's alleged poor performance constituted a

material breach of the Agreement and excused Defendant's obligation to pay.

Plaintiff also claims that Defendant breached the Agreement by using Plaintiff's program after the Agreement's termination date. Defendant disputes this fact. Defendant points to Hartsell's testimony that, after Defendant stopped using Plaintiff's product, Defendant disabled it. Hartsell also testified that it was possible that cached pages of the inactive website might be accessible under certain circumstances. Although Plaintiff asserts that Defendant's use of its code after termination of the Agreement resulted in 126 leads, this fact is not contained in Mizer's affidavit and the exhibit Plaintiff cites in support of that fact does not appear to support that claim. Therefore, the Court finds a genuine issue of material fact remains whether Defendant breached the Agreement by using Plaintiff's program after the Agreement's termination date.

Finally, Plaintiff argues that Defendant breached the Agreement by providing Plaintiff's code to third parties. Plaintiff claims that, despite terminating his involvement with Auto Buy Cell and removing the demo website, Plaintiff's code was copied to a new demo without his permission. However, questions of fact remain

whether the code in question was Plaintiff's code or Agnew's code, as both claim ownership. Therefore, genuine issues of material fact remain. Plaintiff is not entitled to summary judgment on Count I.

**B.    Plaintiff is Not Entitled To Summary Judgment on the Conversion Claim (Count II)**

Plaintiff seeks summary judgment on its conversion claim. Plaintiff claims that Defendant converted Plaintiff's (1) proprietary software, business model, web services, and other related intellectual property provided to Defendant pursuant to the Agreement; and (2) software code and technology for the Auto Buy Cell platform.

To prove conversion under Illinois law, Plaintiff must establish (1) a right to certain property; (2) an absolute and unconditional right to the immediate possession of the property; (3) that Plaintiff made a demand for possession; and (4) Defendant wrongfully and without authorization assumed control, dominion, or ownership over the property.  Cirrincione v. Johnson, 184 Ill. 2d 109, 114 (1998).  Ordinarily, "'an action for conversion lies only for personal property which is tangible, or at least represented by or connected

with something tangible.'" In re Thebus, 108 Ill.2d 255, 260 (1985) (quoting 18 Am.Jur.2d Conversion sec. 9, at 164 (1965)).

In September 2014, Defendant filed a motion to dismiss asserting that Illinois courts do not recognize an action for conversion of intangible rights. This Court found no need to decide the issue because the Complaint alleged, in part, the conversion of property that was tangible or represented by or connected with something tangible. Opinion at 14 (d/e 15) (referring to the provisions in the Agreement that contemplated the return of confidential information, including materials and writings, upon termination of the Agreement). Defendant does not re-raise the issue here. Therefore, the Court will assume, for purposes of this Motion, that Plaintiff can bring an action for conversion of its propriety software, business model, web services, and other related intellectual property at issue in the Agreement and the software code and technology for the Auto Buy Cell platform.

Defendant asserts that genuine issues of material fact remain because Plaintiff failed to prove that Plaintiff made a timely demand for return of its software code related to the Agreement. Defendant also asserts that genuine issues of material fact remain whether

Plaintiff or Agnew lawfully owned the software code related to the Auto Buy Cell platform.

The Court agrees that genuine issues of material fact remain. Plaintiff points to an email of April 5, 2013 from Mizer to Defendant's employee, Hartsell, as evidence that Plaintiff demanded that Defendant remove the software code from the website. However, that email does not demand that Defendant remove the software code.  See Caterpillar Inc. v. Sturman Indus., Inc., No. 99-CV-1201, 2005 WL 3132196, at *2 (C.D. Ill. 2005) (providing that the demand must request the present delivery of property and be in absolute, unequivocal terms) (citing 90 C.J.S. Trover and Conversion § 43).  At most, the email alerts Defendant of Plaintiff's claim that Defendant was representing Plaintiff's property as its own.

In addition, a genuine issue of material fact remains whether Plaintiff or Agnew lawfully owned the code appearing on the Auto Buy Cell Website.  Therefore, Plaintiff is not entitled to summary judgment on Count II.

The Court also notes that state law claims are preempted by the Copyright Act where the state law claims arise exclusively from

conduct governed by the Copyright Act.  <u>Cassetica Software, Inc. v.</u> <u>Computer Scis. Corp.</u>, No. 09 C 0003, 2009 WL 1703015, at *4–5 (N.D. Ill. June 18, 2009).  The parties will need to address this issue at the Final Pretrial Conference.

## C.    Plaintiff is Not Entitled to Summary Judgment on the Quantum Meruit Claim (Count III)

Plaintiff seeks damages for Defendant's alleged use of its software code after expiration of the Agreement, January 1, 2011 until early February 2013.  Plaintiff is entitled to damages under a quantum meruit theory if Plaintiff proves that:  (1) Plaintiff performed a service to benefit the defendant; (2) Plaintiff did not perform the service gratuitously; (3) Defendant accepted this service; and (4) no contract existed to provide for payment for the service.  <u>Instalico Inc. v. Whiting Corp.</u>, 336 Ill. App. 3d 776, 781 (2002).

Plaintiff asserts that the undisputed facts show that (1) Plaintiff provided Defendant with software code for more than two years after expiration of the Agreement; (2) Plaintiff did not intend that the services would be done for free; (3) Defendant accepted the services, which generated additional automotive leads and activities

for the television stations' clients; and (4) there was no contract in place for this time period.

Defendant argues that a genuine issue of material fact remains. The Court agrees. A question of fact remains whether Defendant accepted the services of Plaintiff. Hartsell, who was an employee of Defendant at the relevant time, testified that he believed the forward facing pages of Plaintiff's software were removed when the contract expired but he could not eliminate the possibility that some cached pages might still have existed on Defendant's servers. Defendant argues that the fact that some of Plaintiff's software may have persisted on Defendant's server as a result of a computer glitch is not consistent with a finding that Defendant knowingly continued to accept Plaintiff's service at the expiration of the contract. Because genuine issues of material fact remain, Plaintiff is not entitled to summary judgment on Count III.

## D.  Plaintiff is Not Entitled to Summary Judgment on the Copyright Claim (Count IV)

Plaintiff argues it is entitled to summary judgment on the copyright infringement claim. Plaintiff states that Plaintiff had ownership of a valid copyright and that Defendant copied elements

of Plaintiff's original work.  Specifically, Plaintiff claims that Defendant used Plaintiff's copyrighted proprietary software business model for car locating.  Plaintiff appears to only seek summary judgment regarding the software that Plaintiff alleges was not removed from Defendant's website after termination of the Agreement and not the software related to Auto Buy Cell.

To establish copyright infringement, Plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 360 (1991).  "Copying" in this context means infringing any of the exclusive rights of the copyright owner.  Marobie-FL, Inc. v. Nat'l Ass'n of Fire Equip. Distribs., 983 F. Supp. 1167, 1172 n.1 (N.D. Ill. 1997).  The exclusive rights include the rights to reproduce the copyrighted work, prepare derivative works based on the copyrighted work, and distribute copies of the copyrighted work to the public.  17 U.S.C. § 1061)-(3).

A plaintiff can prove copying by pointing to direct evidence of copying or by showing that the alleged infringer had access to the copyrighted work and that the alleged infringer's works are substantially similar to the copyrighted work.  See Susan Wakeen

Doll Co., Inc. v. Ashton Drake Galleries, 272 F.3d 441, 450 (7th Cir. 2001).  If a plaintiff shows access and substantial similarity, the defendant can rebut the inference of copying by showing that the allegedly infringing work was independently created.  JCW Invs., Inc. v. Novelty, Inc., 482 F.3d 910, 915 (7th Cir. 2007).

Defendant does not argue that Plaintiff did not hold a valid copyright.  Moreover, Defendant did not respond to Plaintiff's claim that Defendant infringed Plaintiff's copyright by retaining Plaintiff's software after the expiration of the Agreement.  Defendant only addresses the copyright claim related to the Auto Buy Cell software.  However, the Court nonetheless finds that Plaintiff has not demonstrated that Plaintiff is entitled to judgment as a matter of law.  Questions of fact remain whether Defendant infringed Plaintiff's copyright if, as Defendant claims, the software inadvertently remained on inactive web pages.  See, e.g., See Frasier v. Adams-Sandler, Inc., 94 F.3d 129, 130 (4th Cir. 1996) (finding that the defendant's failure to return copyrighted material upon request did not violate copyright law where the defendant did not in any way use or copy the photographs); Design Data Corp. v. Enter., Inc., 847 F.3d 1169, 1172 (9th Cir. 2017) (finding genuine issue of

material fact remained whether the defendant's download of the plaintiff's program was more than an insignificant violation).

If Plaintiff does, in fact, seek summary judgment on its copyright claim pertaining to the Auto Buy Cell software, that request is denied. Genuine issues of material fact remain whether the software belonged to Plaintiff or Agnew.

## IV. CONCLUSION

For the reasons stated, Plaintiff's Motion for Summary Judgment is DENIED. This case is set for a Final Pretrial Conference on January 2, 2018 at 2:00 PM and Jury Trial on January 16, 2018 at 9:00 AM.

**ENTER: October 18, 2017**

**FOR THE COURT:**

*s/Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**